UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:08CV1530 JCH |
| | ) | (TIA) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

## I. Procedural History

On December 20, 2005, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning July 23, 2005 due to problems with lower back, both knees, and neck; post traumatic anxiety and stress disorder; GERD and lower abdominal pain; right eye laceration; bilateral hearing loss; head injury residuals; high blood pressure; acid reflux; and shoulder pain. (Tr. 66-73, 94) Plaintiff's applications were denied, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 42-51)

On December 17, 2007, Plaintiff testified at a hearing before an ALJ and was accompanied by his attorney. (Tr. 20-41) In a decision dated January 23, 2008, the ALJ found that Plaintiff was not under a disability at any time through the date of the decision (Tr. 9-17) Thereafter, the Plaintiff

filed a request for review with the Appeals Council, which denied said request on August 12, 2008. (Tr. 1-5)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  Evidence Before the ALJ

At the hearing dated December 17, 2007, Plaintiff testified that he was born on February 5, 1961 and was 46 years old.  He weighed 242 pounds and measured 6 feet 1 inch.  He lived in a house with his father.  Plaintiff stated that he completed the 11th grade and last worked at a restaurant in 2004 or 2005.  He stopped working due to problems with his knees and back.  Plaintiff also worked as a Corrections Officer for the Police Department City Workhouse; a maintenance worker; a construction worker; and a machine operator and truck loader for a bakery.  (Tr. 23-5)

With regard to his medical problems, Plaintiff testified that he had a major stress disorder; problems with both ankles; problems with both knees, resulting in surgery on the right knee; problems with both shoulders, including upcoming surgery on the left shoulder; lower back problems, specifically at L4 and L5; worsening arthritis; and headaches resulting from head injuries.  Plaintiff stated that he took 11 or 12 medications, some which had bad side effects.  Plaintiff's doctors took him off of those medications.  However, according to Plaintiff, one medication caused stomach ulcers, resulting in the need to take stomach medication.  (Tr. 25-6)

Plaintiff further testified that his major depressive stress disorder caused him to isolate himself from others.  He had suicidal thoughts in the past and was hospitalized for two weeks following a suicide attempt.  Plaintiff was able to bathe, clothe, and eat two meals and snacks every day.  Plaintiff attended individual sessions with his psychiatrist, Dr. Latell, along with group meetings at the VA Hospital.  Plaintiff also took Prozac and Trazodone.  However, despite the Trazodone, Plaintiff continued to have problems sleeping due to the pain in his back, knees, and shoulder.  (Tr. 26-9)

Plaintiff further testified that he had problems with his knees. He had surgery on his right knee to repair a meniscus tear 1 ½ weeks prior to the hearing. Plaintiff had experienced problems for 10 to 15 years and underwent physical therapy and chiropractic services. In addition, he had hinged braces for both knees. With regard to his right knee, Plaintiff stated that bending, squatting, kneeling, crawling, balancing, climbing stairs, and climbing ladders increased his pain. Walking and standing also caused pain. Plaintiff used knee braces, and more recently a cane, for walking. Plaintiff also had pain in his left knee. He anticipated that he would need surgery for that knee as well. (Tr. 29-31)

In addition, Plaintiff stated that he had a tear in his left shoulder which required surgery. According to Plaintiff, his doctor, Dr. Chan, also opined that Plaintiff had a pinched nerve in his neck which caused pain through his shoulder and arm. Plaintiff testified that Dr. Chan planned to schedule an MRI. Lifting and reaching caused the pain in his shoulders and arms, and Dr. Chan had informed Plaintiff that he could not return to any kind of work. (Tr. 31-3)

Further, Plaintiff testified regarding back pain. While he had no plans for surgery, Plaintiff stated that his back was "pretty screwed up." His chiropractor opined that Plaintiff's lower back pain resulted from the sciatic nerve and lumbar issues at L4 and L5. Bending, stooping, and reaching exacerbated the pain. However, Plaintiff stated that he was in constant pain, even when sleeping or sitting. His back hurt so bad that he needed to change positions constantly, which included walking around at night. Plaintiff testified that he could only sit for about a half hour before needing to stand for 15 to 20 minutes. Plaintiff also had to lay down and take little naps during the day. His medications made him tired and prevented him from doing too much. (Tr. 33-6)

Plaintiff additionally testified regarding headaches stemming from a previous head trauma.

Some of his medications made the headaches worse. Sometimes the headaches hurt so bad that Plaintiff would cry due to pain. He experienced these headaches 2 or 3 times a month, sometimes more. The headaches typically lasted for a day. Plaintiff also experienced loss of balance, dizziness, and blurred vision. Plaintiff did not drive or have a driver's license. (Tr. 36-8)

Plaintiff further stated that before his knee surgery, he could walk about a half hour before feeling pain or being tired. When he walked to the bus stop, he needed to sit on the bench at the stop. Plaintiff previously attended Veteran's meetings at the American Legion; however, he could no longer afford the dues. He did not visit with his family and kept to himself. Plaintiff cooked and did laundry at home. He testified that he was previously a chef. However, he could no longer cook for 8 hours in a work day. He typically spent 10 or 15 minutes preparing a meal. In addition, he did not participate in any outdoor activities. Plaintiff could vacuum, sweep, and make his bed. However, he had to adjust the way he took care of himself due to his pain. (Tr. 38-40)

A representative of the SSA interviewed Plaintiff, who was well-dressed, polite, and organized. Plaintiff did not have a noticeable limp or difficulty walking. (Tr. 89-92) On June 17, 2006, Plaintiff completed a Function Report - Adult. Plaintiff reported that, on a typical day, he woke up; took a shower; watched the news; took medication; ate; took more medication; took a short walk; watched more TV; went through medical files; checked for appointments with the VA hospital or Jefferson Barracks; sometimes visited Vet Center Representatives; went to Logan Health Center for low back pain and other joint dysfunctions; watched TV; took medication; and went to sleep. Plaintiff was able to cook his own meals daily, and could wash clothes, clean his room, and iron sometimes. His hobbies included watching TV and movies. Plaintiff attended church every other Sunday. Plaintiff stated that his conditions affected all of his abilities other than talking and following

instructions. He reported that he could walk ½ mile before needing to rest for 10 to 15 minutes. Although Plaintiff could pay attention, follow written and spoken instructions, and get along with authority figures, he reported that he could not handle stress or changes in routine. (Tr. 111-18)

Plaintiffs friend, Gary Quirk, also completed a Function Report Adult - Third Party. He indicated that he knew Plaintiff for 15 years and that they spent time together 2 or 3 times a week watching TV or discussing the military. Plaintiff's daily activities included taking medication, eating, watching TV, isolating himself from everyone, and going to sleep. Mr. Quirk further reported mood swings, along with grumpiness and anger. Plaintiff could not lift 20 pounds and could only walk less than ½ mile because his illness drained his system. Mr. Quirk stated that Plaintiff was a good, honest person who loved to work. However, he was mad at the world because of his disability. (Tr. 119-26)

### III.  Medical Evidence

On May 6, 1998, Plaintiff was diagnosed with post-concussion syndrome without neurological findings. (Tr. 578) On April 21, 2005, Plaintiff went to the Mental Health Clinic at the VA Medical Center in Phoenix, AZ, reporting problems with stress and an inability to retain a job due to his inability to work with others. He also reported pain. Plaintiff was diagnosed with Depressive Disorder; Occupational problem; Cocaine dependence in remission 2002; Cannabis dependence in remission 1982; Alcohol dependence in remission 1982; Nicotine abuse in remission 2002; hypertension; knee pain; rheumatoid arthritis; diabetes mellitus type 2; history of prostatis; and a GAF of 55.[1]  (Tr. 390-91)

---

[1] A GAF score of 51 to 60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

On April 28, 2005, Plaintiff reported psychiatric problems, chronic abdominal pain, and chronic joint pain. The joint pain was worst in his shoulders, back, and knees. The assessment included chronic depression; chronic abdominal pain; chronic joint pain; and hypertension. (Tr. 385-86) Plaintiff complained of abdominal pain and sacroilliac joint pain on July 9, 2005. The physician told Plaintiff to continue taking Vicodin as needed and recommended stretching exercises. (Tr. 367) On July 19, 2005, a VA Medical Center physician assessed hypertension, well controlled; back pain; gastroesophageal reflux disease (GERD); high cholesterol; and groin pain. (Tr. 330-31)

Plaintiff saw a social worker on September 20, 2005. He reported feeling like a big failure. He felt significantly depressed and, although he did not currently have suicidal or homicidal ideations, he had felt suicidal earlier that year. The social worker recommended a psych evaluation. (Tr. 226-27) A summary of treatment records from the VA Medical Center revealed diagnoses of recurrent major depressive affective disorder in 2005 and 2006. (Tr. 186-90) On October 14, 2005, Plaintiff complained of feeling "down and out" for the past 3 to 4 years due to pain. He reported that he experienced headaches, pain in his back, groin, both knees, both shoulders, and right ankle. He had impaired sleep and appetite, and he was easily irritated. The examining nurse also found the presence of delusions/hallucinations and suicidal/aggressive thoughts. Plaintiff's concentration and memory were impaired. The nurse assessed major depressive disorder, recurrent; chronic pain and headaches, hypertension, and acid reflux; social stressors due to relocation to St. Louis, pain, military not responding to his claims of pain, and unemployment. Recommended interventions included medication and psychotherapy. (Tr. 222-25)

On November 28, 2005, Plaintiff complained of pain in both shoulder, knees, and low back over the past 3 to 4 months. Plaintiff also reported headache, pain in eyes, and ear ache on the right,

along difficulty sleeping. (Tr. 217-18) The following day, Plaintiff attended a psychiatric evaluation. Plaintiff stated that he experienced a lot of pain in his back and knees, which interfered with his ability to work. He tried working in a bakery but was unable to physically perform the job. His mood was better, although he was irritable at times. In addition, his concentration and sleep remained impaired. He slept well with Trazodone when he did not experience pain. Plaintiff stated that he continued to have thoughts of hurting others but walked away. He enjoyed playing with his children, nieces, and nephews. Plaintiff's diagnosis included major depressive disorder, recurrent, with improvement on medication and a GAF of 63.[2] (Tr. 213-15) By December 14, 2005, Plaintiff reported sleeping well with Trazodone. He had a good appetite and denied any suicidal/homicidal ideation. His motor activity, mood, and affect were abnormal. The examining psychologist assessed major depression-recurrent; situational stressors which influenced his mood and responses; and a GAF of 64. (Tr. 201-203)

Also on December 14, 2005, Plaintiff attended vocational rehabilitation. Plaintiff appeared motivated to return to work. Plaintiff had been hired by several employers to perform jobs involving cooking and/or light maintenance. However, he was unable to meet the physical demands of work, resulting in his termination. The vocational rehabilitation specialist concluded that job search activity was inappropriate, as Plaintiff's work and educational experience were nullified by his physical disabilities. (Tr. 205-206)

Plaintiff received treatment for his neck and low back pain at Logan Chiropractic Health Center from September 2005 through January 2006. (Tr. 158-81) In September 2005, Plaintiff

---

[2]  A GAF score of 61 to 70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34.

complained of burning, sharp, and throbbing severe pain in his shoulders, arms, back, groin, knees, and ankle. The pain was constant and was aggravated by all types of activities. (Tr. 180) A chest x-ray on December 9, 2005 showed no active cardiopulmonary disease and bilateral calcified granulomas throughout the lungs bilaterally. In addition, a pelvic x-ray showed degenerative joint disease at the right sacroiliac joint. (Tr. 174) On January 26, 2006, Plaintiff continued to complain of pain in his shoulders and lower back. However, he indicated that the stretches helped and that he felt he was improving. (Tr. 158)

On December 10, 2005, Plaintiff complained of heartburn, weight gain, constant lower abdominal pain with crampy/sharp pain, multiple ER visits for abdominal pain, loose bowel movements, positive bloating, and occasional incontinence. The physician at the VA Medical Center diagnosed GERD with no alarm symptoms, abdominal pain with long history of symptoms suggestive of irritable bowel syndrome, and changes in bowel habits/ incontinence. (Tr. 422-23)

On February 6, 2006, Plaintiff visited the Psychiatry Clinic at the VA Medical Center. He reported feeling better emotionally but continued to have physical pain. He had a good appetite and slept well. Plaintiff stated that he experienced pain when sitting, standing, and changing positions. His mood and memory were normal, but his affect was slightly irritable. The examiner assessed major depression-recurrent-stabilized and a GAF of 65. (Tr. 473-75, 609-12)

Plaintiff went to the Gastroenterology Department at the VA Medical Center on March 1, 2006 for a follow-up visit. The examining physician diagnosed GERD, improved with PPI, continue with current dose; loose BM and abdominal pain related to IBS, good response to fiber; lower back pain, which contributed to the abdominal pain and could be the result of nerve pressure from osteophytes; and colonic polyps. (Tr. 471)

Records from the Division of Vocational Rehabilitation indicated on March 8, 2006 that Plaintiff had a severe physical or mental impairment that seriously limited one or more functional capacities in terms of an employment outcome. The counselor assessed psychosocial impairments due to depressive and other mood disorders and major depression disorder, recurrent, as Plaintiff's primary disabilities. In addition, the secondary disabilities included orthopedic impairments including derangement knee, chronic bilateral knee pain, and chronic low back pain. Functional limitations included prolonged standing, walking, carrying, lifting, squatting, climbing, depressed mood, irritable mood, and limited insight. According to the counselor, Plaintiff was unable to perform his regular occupation. In addition, he needed to avoid employment which was likely to aggravate disability; create a hazard to future health and safety; or jeopardize health and safety of others. Further, Plaintiff's disability interfered with preparation for an occupation commensurate with his capacities and abilities. However, the counselor opined that Plaintiff could benefit in terms of employment outcome from vocational rehabilitation. (Tr. 596-601)

On March 27, 2006, Plaintiff returned to the VA Medical Center complaining of increased back pain, ankle pain, and knee pain. Plaintiff reported that he used a cane at times and that previous use of Vicodin improved the pain. Plaintiff also reported prior unsuccessful attempts to work due to the physical requirements. The assessment included degenerative joint disease of the knees and ankle; degenerative disc disease of the lumbar spine; and a possible left shoulder strain. Plaintiff was prescribed bilateral Don Joy braces, flexeril, acetaminophen, hydrocortisone cream, hydroxyzine, and x-rays of the lumbar spine, both knees, left shoulder, and right ankle. (Tr. 461-62)

Plaintiff had a follow up visit with the Psychiatry Clinic on May 2, 2006. Plaintiff reported continuing to exercise at the gym. He planned to attend 3 days a week to lose weight. He took

Trazadone and reported sleeping 8 to 9 hours uninterrupted. Plaintiff's assessment was major depression and a GAF of 65. (Tr. 450-51)

A Vocational Evaluation Report pertaining to May 8, 2006 to July 28, 2006 recommended that Plaintiff focus on physical therapy and building his strength and stamina. During his evaluation, Plaintiff experienced intensified pain and discomfort after participating in simulated work samples and assessments. A work capabilities assessment further indicated that Plaintiff should not work (standing/walking/sitting) for more than 2 hours in a workday. The report also recommended that Plaintiff continue medication and medical appointments; pursue only sedentary jobs; and practice on the computer and keyboard to improve his skills. (Tr. 665-67)

Plaintiff saw his primary care physician at the VA Medical Center on May 30, 2006. He complained of difficulty urinating and eye irritation. Plaintiff reported improvement to his knee pain with the braces. The physician assessed pinguecula, rule out urinary tract infection, and prostatitis. (Tr. 443-44)

On June 1, 2006, Plaintiff returned to the Psychology Department at the VA Medical Center for treatment of major depressive disorder, recurrent. Plaintiff reported increased pain in his ankle, knee, and back but was happy with the approach his new primary care physician was taking. Plaintiff stated that he slept okay and was decreasing the amount of Trazadone he took. His mood was okay. However, Plaintiff noted that he sometimes skipped taking his anti-depressant, which caused a noticeable difference in his mood. Plaintiff became more irritable and quick to anger. Plaintiff's diagnosis was unchanged, and the psychologist noted that the outcome of the session was positive. (Tr. 442-43) In a Psychiatric Review Technique form completed on June 2, 2006, F. Cottone assessed Plaintiff from July 23, 2005 to present, noting that Plaintiff's impairments were not severe.

Plaintiff's functional limitations were only mild, and his mental condition at that time appeared stable. (Tr. 241-53)

A work capabilities assessment performed on July 20, 2006 revealed that Plaintiff had low back pain and degenerative joint disease. He was limited to lifting 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking less than 2 hours in an eight hour workday; and sitting less than 2 hours with normal breaks. Further, the counselor opined that Plaintiff could never climb, balance, stoop, kneel, crouch, crawl, squat, or twist. He could occasionally bend. In addition, his ability to reach, including overhead, was limited. The counselor additionally stated that Plaintiff should avoid concentrated exposures to temperature extremes, work near chemicals or fumes, vibrations, work at heights, and work involving machinery. (Tr. 604-5)

Plaintiff was evaluated at the VA Medical Clinic on July 24, 2006. He complained of chronic back and shoulder pain. Plaintiff had difficulty getting up from a seated position. His lumbar flexion and lateral bending were limited. The physician noted that Plaintiff wore braces and had trouble standing on his toes and heels, but his gait was normal. Plaintiff also had muscle spasms in the paraspinals at the lumbar level. His range of motion was limited on the left shoulder. The physician diagnosed hypertension; degenerative joint disease of the knees; depression; and high blood pressure. Further, the physician recommended that Plaintiff lose weight, try swimming, and attend physical therapy. (Tr. 962)

The following day, Plaintiff attended a group session at the Psychiatric Clinic. Plaintiff's mood was agitated, and his affect was congruent. His assessment was major depression with a GAF of 65. (Tr. 958-61) After another group session on August 1, 2006, Plaintiff's assessment was the same. The facilitator noted that Plaintiff focused on his pain. (Tr. 950-53)

On August 18, 2006, Plaintiff returned to the VA Medical Clinic complaining of increased pain in knees and an inability to use his braces due to swelling. He reported, however, that the braces helped when he could put them on. The physician assessed right knee effusion with possible tendon damage. (Tr. 949) Plaintiff again complained of worsening right knee pain on August 21, 2006. The physician assessed right knee pain and considered pseudogout versus a ligament injury and was awaiting bone scan results. In addition, the physician recommended the use of crutches to limit weight-bearing on the right lower extremity. (Tr. 942-45)

A summary from a MERS/Goodwill vocational counselor dated August 23, 2006 stated that Plaintiff's pace on simulated work samples was slowed due to severe back pain, feelings of severe depression, and moderate anxiety. Further, any job that Plaintiff pursued in the future needed to be sedentary. The counselor also suggested computer and keyboard training. (Tr. 518)

Appointments at the VA Psychiatric Clinic on August 29, 2006 and September 5, 2006 revealed diagnoses of major depression and a GAF of 66. The diagnoses remained the same on November 27, 2006. The evaluator commented that Plaintiff's pain was an active component of his depression and that she could evaluate the depressive symptoms in isolation from the pain after Orthopedics addressed the knee in December. (Tr. 918-21, 933-39)

On September 19, 2006, Plaintiff visited the Orthopedic Department at the VA Medical Center for an orthopedic consultation. Plaintiff reported bilateral knee pain, specifically right knee pain that had significantly increased over the past year. Plaintiff also stated that his right knee started giving out and locking up, causing him to fall. The orthopedist assessed bilateral knee pain and bilateral knee degenerative joint disease. (Tr. 931-32) An MRI of Plaintiff's right knee revealed a horizontal tear of the medial meniscus and degenerative changes. In addition, small joint effusion was

present.  (Tr. 702)

Plaintiff returned to the Orthopedic Department on December 19, 2006 for complaints of bilateral knee pain and a significant increase in right knee pain with the right knee giving out.  Plaintiff requested arthroscopic surgery.  (Tr. 911-13)

Plaintiff was hospitalized at the VA Medical Center from April 12, 2007 through April 23, 2007.  His discharge diagnosis was major depressive disorder; alcohol and cocaine abuse; pain disorder, chronic with psychological factor; and a GAF of 30[3] on admission and 55 upon discharge. Plaintiff reported drinking after 5 years of sobriety and feelings of hopelessness and uselessness.  He stated that he began contemplating suicide and was afraid he would follow through with those thoughts if he did not admit himself to the hospital.  He also reported stressors including worsening arthritic pain, unemployment over the past 2 years, and separation from his wife and children.  (Tr. 710-24, 864-903) On May 15, 2007, Plaintiff was diagnosed with major depression and alcohol and cocaine dependence.  His GAF was 59.  (Tr. 810)

In August, 2007, Plaintiff continued to complain of pain in the lower back, both legs, and right knee, as well as stiffness in his left shoulder and neck.  The chiropractor assessed sacroiliac strain/sprain; myofascial pain; segmental dysfunction of the lumbar spine; and sacroiliac joint complicated by degenerative changes.  (Tr. 768, 772-76)

A vocational rehabilitation specialist noted on September 14, 2007 that Plaintiff called and left a voice-mail message indicating that he was unable to work.  The specialist was not going to make a determination on whether to close the case until after she spoke with Plaintiff.  (Tr. 764)

---

[3] A GAF of 31 through 40 represents "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ."  DSM-IV-TR at 34.

On October 7, 2007, Plaintiff attended an appointment at the Orthopedic Clinic. The physician assessed right knee posterior horn medial meniscus tear and possible lateral meniscus tear and noted that Plaintiff received medical clearance for right knee arthroscopy. (Tr. 760)

On November 29, 2007, Plaintiff reported being hit by a car while on his bike in September, resulting in right knee, left shoulder, neck, and lower back pain. (Tr. 746) An appointment at the Orthopedic Clinic on that same day revealed right medical meniscal tear and left shoulder pain. Arthroscopic surgery for a partial medial meniscectomy was scheduled for December 7, 2007. Plaintiff had reasonable strength in the rotator cuff of his left shoulder. However, the orthopedist noted a possible partial-thickness tear or cervical radiculopathy. (Tr. 756-57) An x-ray of the left shoulder showed minimal hypertrophic degenerative changes with no clear evidence of fracture, dislocation, or bone abnormality. The impression was mild degenerative joint disease. (Tr. 689)

Plaintiff underwent right arthroscopic partial medial meniscectomy surgery on December 5, 2007. (Tr. 736-42) A follow-up examination on December 20, 2007 revealed improvement to Plaintiff's knee pain. He continued to complain of left shoulder pain. The physician assistant noted that Dr. Chen examined Plaintiff and suggested an MRI of the left shoulder. Plaintiff also needed to follow-up with his primary care physician for evaluation of his neck and low back pain. (Tr. 725)

In January, 2008, Plaintiff complained of back pain and right knee pain. He walked well, except for limping on the right. Plaintiff was assessed with possible degenerative disc disease. (Tr. 1025) On January 30, 2008, Plaintiff again complained of right knee pain, hip pain, and low back pain. (Tr. 1028) An MRI of the left shoulder revealed a tear of the left rotator cuff; osteoarthritis of the left acromioclavicular joint; and subacromial spur and narrowing of the subacromial space. An MRI of the lumbar spine demonstrated degenerative disc disease at L4-L5 and narrowing of the spinal

canal and neural foramina.  Plaintiff was referred to neurology for a consultation.  (Tr. 1028-38)

## IV.  The ALJ's Determination

In a decision dated January 23, 2008, the ALJ found that Plaintiff met the special earnings requirement of the Act as of July 23, 2005, the alleged onset of disability, and continued to meet them through the date of the decision.  Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  The ALJ further found that Plaintiff had status-post arthroscopic surgery and partial medial meniscectomy of the right knee, degenerative joint disease of the left shoulder, mild degenerative disc disease of the lumbosacral spine, hypertension, hyperlipidemia, gastroesophageal reflux disease controlled by medication, and major depressive disorder controlled by medication. However, he did not have an impairment or combination of impairments that met or equaled the severity requirements of Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16)

In addition, the ALJ determined that Plaintiff's allegations of impairments preventing the performance of any sustained work activity were not credible.  The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform work except that requiring prolonged or frequent standing or walking; lifting or carrying objects weighing more than 10 pounds; or repetitively reaching or lifting with the left upper extremity.  Further, the ALJ stated that Plaintiff had no credible, medically-established, chronic mental or other non-exertional limitations.  Although he was probably unable to perform any past relevant work, the ALJ found that Plaintiff had the RFC to perform the full range of at least sedentary work.  Plaintiff was a younger individual with an 11th grade education and possible transferrable skills.  The ALJ further relied upon Table No. 1, Appendix 2, Subpart P, Regulations No. 4 ("Grids") to determine that Plaintiff was not disabled.  Finally, the ALJ concluded that Plaintiff had no uncontrollable substance use disorder which would prevent the performance of

substantial gainful activity.  (Tr. 16-7)

Specifically, the ALJ assessed Plaintiff's hearing testimony, noting Plaintiff's past work, alleged disabling impairments, and daily activities.  Further, the ALJ examined Plaintiff's medical records, which documented degenerative changes in Plaintiff's left shoulder and knees.  While Plaintiff could not perform his past relevant work, the ALJ noted that no doctor stated or implied that Plaintiff was disabled, incapacitated, or unable to work.  In addition, Plaintiff did not have any significant or uncontrollable adverse side effects from his medication.  The ALJ also found that Plaintiff chose to restrict his daily activities and that his depression did not cause long-term, significant impairments.  Further, the isolated instances of substance abuse did not equate to drug or alcohol addiction.  The ALJ thus found that Plaintiff was capable of performing the full range of sedentary work and was not disabled.  (Tr. 10-16)

### V.  Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability.  42 U.S.C. § 423(a)(1).  The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months."  20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process.  See 20 C.F.R. § 404.1520(b)-(f).  Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20

C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995).

It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence.  Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[4] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak , 49 F.3d at 1354.

### Discussion

Plaintiff argues that the ALJ erred in that he failed to properly consider Plaintiff's RFC and failed to utilize a vocational expert ("VE") in determining that Plaintiff was capable of performing work.  Defendant contends that the ALJ properly assessed Plaintiff's RFC and properly relied on the Medical-Vocational Guidelines ("Grids").   Specifically, Defendant asserts the ALJ's credibility analysis was proper and that vocational testimony was unnecessary in light of the ALJ's finding that Plaintiff had no significant non-exertional impairments.

The undersigned agrees with the Plaintiff's argument that the ALJ's determination is not supported by substantial evidence because the ALJ failed to utilize a VE in light of Plaintiff's non-

_____

[4]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

exertional impairments. The ALJ found that Plaintiff had severe impairments, including status-post arthroscopic surgery and partial medial meniscectomy of the right knee, degenerative joint disease of the left shoulder, mild degenerative disc disease of the lumbosacral spine, hypertension, hyperlipidemia, gastroesophageal reflux disease controlled by medication, and major depressive disorder controlled by medication. (Tr. 16) In reaching his decision that Plaintiff could perform the full range of sedentary work, the ALJ relied on the Grids instead of consulting a VE. Specifically, the ALJ found that Plaintiff did not have "any credible, medically-established mental or mood disorder that would prevent him from doing ordinary work." (Tr. 15)

An ALJ may rely on the Grids to find a plaintiff not disabled where the plaintiff does not have non-exertional impairments or where the non-exertional impairment does not diminish the plaintiff's RFC to perform the full range of activities listed in the Grids. Muncy v. Apfel, 247 F.3d 728, 735 (8th Cir. 2001) (citing Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999)). "However, when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability." Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999). "Nonexertional limitations 'affect an individual's ability to meet the nonstrength demands of jobs,' Social Security Ruling 96-4p, 1996 WL 37418, *1 (1996), 'that is, demands other than sitting, standing, walking lifting, carrying, pushing or pulling[.]'" Sykes v. Astrue, No. 4:06cv1732 TCM, 2008 WL 619216, at *19 (E.D. Mo. March 3, 2008) (quoting 20 C.F.R. § 404.1569a(a)). Non-exertional limitations include difficulty functioning due to pain, nervousness, anxiety, or depression. See 20 C.F.R. § 404.1569a(c).

Here, the ALJ determined that Plaintiff's non-exertional impairments of pain and depression

did not limit his ability to do basic work activities. However, the medical records do not support this finding. Plaintiff received ongoing mental healthcare from the VA Medical Center Psychiatric Clinic for depression, along with prescriptions for psychotropic drugs. Further, treatment notes reflect that Plaintiff was unable to handle stressful situations and was obsessed with his pain. (Tr. 201-203, 213-15, 222-25, 442-43, 450-51, 473-75, 609-12, 716-17, 918-21, 933-39, 950-53)

In determining whether a plaintiff is able to perform work, the evaluation must realistically evaluate a claimant's ability to work in the real world under competitive and stressful conditions and not his or her "'ability merely to lift weights occasionally in a doctor's office.'" Juszczyk v. Astrue, 542 F.3d 626, 633 (8th Cir. 2008) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)). Here, the record demonstrates that Plaintiff has difficulty handling stressful conditions, as evidenced by his voluntary hospitalization after contemplating suicide and by two previous suicide attempts. (Tr. 710-13) Further, the presence of pain negatively impacts Plaintiff's mental condition. (Tr. 710, 920-21) Because the record thus demonstrates that Plaintiff's ability to perform the full range of sedentary work is compromised by his non-exertional limitations, the ALJ was required to consult a VE regarding the effects those limitations have on the availability of work. See Beckley v. Apfel, 152 F.3d 1056, 1060 (8th Cir. 1998).

Therefore, the undersigned finds that the ALJ erred in failing to elicit testimony from a VE regarding Plaintiff's ability to perform work existing in significant numbers in the national economy, despite Plaintiff's non-exertional impairments of pain and depression. As a result, the ALJ formulated an RFC that was not supported by substantial evidence and then erroneously applied the Grids. Id. Therefore, the Commissioner's decision should be reversed and remanded to the ALJ to adduce testimony from a VE regarding Plaintiff's non-exertional impairments and their impact on his ability

to perform jobs in the national economy.  See Yeley v. Astrue, No. 1:07CV148 LMB, 2009 WL 736701, at *13 (E.D. Mo. March 18, 2009).

Accordingly,

**IT IS HEREBY RECOMMENDED** that this cause be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


                    /s/ Terry I. Adelman
                    UNITED STATES MAGISTRATE JUDGE

Dated this   18th   day of February, 2010.